**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | |
| | ) | 1:15-CR-89-ELR |
| STAFFORD S. MAXWELL | ) | |
| _____ | ) | |

**MR. MAXWELL'S SENTENCING MEMORANDUM**
**RE: IMPOSITION OF A REASONABLE SENTENCE PURSUANT TO USSG §3553**

COMES NOW the Defendant, Stafford S. Maxwell, by and through undersigned counsel, and files this Sentencing Memorandum requesting the imposition of a sentence below the applicable sentencing guideline range. Mr. Maxwell makes this request pursuant to 18 U.S.C. §§ 3553(a) and (b). In support of this request, he offers the following.

**Legal Authority and Analysis**

The United States Supreme Court, in United States v. Booker, 125 S. Ct. 738 (2005), ruled that this Court has the authority to impose any sentence within the statutory maximum which it believes is reasonable. Because the sentencing guidelines are no longer mandatory, this Court has the power to impose a sentence below the applicable sentencing range. United States v. Shelton, 400 F.3 1325 (11th Cir. 2005). This authority stems from 18 U.S.C. §3553(a)

1

which states that a sentencing court, in order to impose a fair and appropriate sentence, should consider (*inter alia*) the nature and circumstances of the pending offense, the history and characteristics of the defendant, the need to promote respect for the law and afford adequate deterrence to criminal conduct, the need to provide the defendant with educational opportunities, vocational training or other correctional treatment, and the need to avoid unwarranted sentence disparities among defendants with similar records who commit similar crimes.

Pursuant to Supreme Court and Eleventh Circuit precedent, the sentence imposed must be procedurally *and* substantively reasonable. United States v. Hunt, 459 F.3d 1180, 1182, n. 3 (11th Cir. 2006); Kimbrough v. United States, 552 U.S. 85 (2007). A sentence is procedurally unreasonable if the district court miscalculates the sentencing guidelines or fails to consider the §3553 (a) factors. A sentence is substantively unreasonable if, in light of the §3553(a) factors, it is somehow outside the range of reasonable sentences available for the offense and the offender. Even when a sentence is within the applicable sentencing guideline range, the sentence must still be both procedurally and substantively reasonable. United States v. Talley, 431 F.3d 784 (11th Cir. 2005). Further, the parsimony provision directs district courts to impose a sentence that is " . . . sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)

of this subsection." Subsection (b) states that this Court may impose a sentence outside the applicable guideline range if the Court " . . . finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  Additionally, the Eleventh Circuit does not presume that a sentence is reasonable just because it falls within the applicable sentencing guidelines range. Talley at 786. *See also* United States v. Martin, 455 F.3d 1227 (11th Cir. 2006) and Nelson v. United States, 129 S. Ct. 890, 892 (2009) ("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.") (Emphasis in original). A below-guideline sentence is reasonable in certain cases. *See* United States v. Williams, 435 F.3d 1350, 1353, 1356 (11th Cir. 2006); United States v. Gray, 453 F.3d 1323, 1325 (11th Cir. 2006).

Undersigned Counsel respectfully requests that this Court consider the unique circumstances of Mr. Maxwell's life, the specific conduct he engaged in during the conspiracy and the fact that he had never before been convicted of a crime when it determines the appropriate sentence to impose in this case.  Mr. Maxwell submits that these factors will justify the imposition of a sentence below the applicable sentencing guideline range.

## Historical information[1]

Stafford S. Maxwell was born in Kingston, Jamaica. His parents, Wesley Maxwell and Elizabeth Smith, were never married. His father left him in the care of his mother when he moved to Toronto, Canada. PSR at 14. Life in Jamaica proved difficult. Mr. Maxwell and his siblings were raised in an impoverished and dangerous area of Kingston. Their one room home housed several members of his extended family **Id**. He and his mother briefly relocated to the Bahamas in search of a better life, but returned because conditions there were just as daunting as they had been in Jamaica.

At the age of 6, Mr. Maxwell traveled to Canada for an extended visit with his father. PSR at 14. However, instead of returning his son to his mother, his father decided to maintain physical custody. Although his mother was awarded custody following a legal battle, she eventually permitted him to reside with his father to avoid the violence and poverty of their native country. **Id.**

In Canada, Mr. Maxwell was raised by his father and step-mother. Although he loved and respected his father, their relationship was nearly destroyed because of the verbal and physical abuse inflicted by his father. Despite their conflicts,

---

[1]   The factual background presented in this memorandum is based on numerous discussions with Mr. Maxwell, letters from his family and friends, and the Presentence Report.

his father taught him his trade - carpentry.  However, he longed to return to his mother.

Years later, Mr. Maxwell and his father relocated to the United States where he graduated from high school. He began working for a variety of employers including a supermarket chain and a landscaping business.  He continued working while attending college in Michigan. However, he was forced to drop out of school for financial reasons. PSR at 15.  He found employment with a telecommunications company in New York City, eventually landing a management position. He was just establishing a name for himself in this industry when he learned of his father's untimely death. [2]  He continues to mourn his loss.

Fortunately, Mr. Maxwell and his mother (who had relocated to New York) were reunited. He began a career in real estate as a loan officer while he worked to re-establish their relationship. PSR at 16.  However, the grief he experienced with his father's death was compounded by the subsequent death of his mother. Following his mother's passing, he decided to move to Georgia to begin anew. Here he would meet his future wife.  He married Jiovianni Sablo in 2012. They are now raising their two young children.  Mr. Maxwell also has a teenage daughter who he loves and supports. PSR at 14-15.

In 2007, Mr. Maxwell ventured into the unregulated  world of

---

[2]http://articles.sun-sentinel.com/2002-03-28/news/0203271300_1_broward-boulevard-crash-holmes

5

the Foreign Currency Exchange market (Forex).  His decision to jump into this high stakes system would prove to be the biggest mistake of his life.


## **A Reasonable Sentence should fit the offense and the offender**

The Supreme Court has acknowledged this Court's responsibility to tailor a sentence that considers the unique facts presented in each individual case:

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime'.

Pepper v. United States, 131 S.Ct. 1229 (2010), quoting Koon v. United States, 518 U.S. 81, 113 (1996) and Williams v. New York, 337 U.S. 241, 247 (1949).


## **Chasing the Dream**

The Foreign Currency Exchange Market is the biggest financial market in the world. D. Evans, *Leverage as High as 50-1 Lures OTC*

*Forex Traders*, Bloomberg Business, (Nov. 12, 2014). Unlike the New York Stock Exchange, Forex is unregulated. It allows traders to buy and sale foreign currency around the world 7 days a week; twenty-four hours a day during weekdays. The lure of enormous financial returns, often in just a few moments, has convinced the shrewdest of investors to risk thousands of dollars in a market where most retail investors lose all or most of their investments:

> Forex's frenetic pace can be brutal to rookies and sophisticates alike. Managing proper trade sizes and rapid price movements - all while using 'leverage', or borrowed money, to amp up bets - can be devilishly difficult; one bad trade can blow up an entire account.

S. Bernard, *Is Currency Trading Worth the Risk*, Wall Street Journal, (July 8, 2011).

It was into this world that Mr. Maxwell ran head-on. Forex was a mystery to him when he was first introduced to it by Jason Spellen's uncle - Steve Cox. He was immediately intrigued by the challenge inherent in this high stakes market. He sought out information online and began attending training seminars. Much too soon, he incorporated his business - Millennium Capital Exchange, Inc.- in Georgia. PSR at 5. He began to solicit investors and others were recommended to him by Mr. Spellen. Initially, he realized some success. As his business began to grow however, he starting losing more funds than he was gaining.

7

Regrettably, Mr. Maxwell failed to reveal the truth.  He was a novice, learning as he invested others' funds.  His clients, anxious about the status of their investments, were led to believe their funds were secure. Instead of admitting that his business was failing, he continued to mislead his clients. Although some investors received partial refunds, by 2011 everything was gone.

## Accepting the Consequences

Mr. Maxwell was arrested in his home in the presence of his wife and children.  Devastated by the realization of what he had done, he accepted responsibility for his conduct and plead guilty to every count of the Indictment.  Since his release on bond, he has secured employment as a bus driver with Park-N-Fly in Atlanta. PSR at 16.  He has continued to support his family and has abided by every condition of his pretrial release. He has relied on the strength of his family and his faith to accept what he has done and to endure the consequences.

There is no doubt that Mr. Maxwell should have been honest with his investors. Instead of acknowledging his limitations, he worked to convince his clients that he was skilled in a field that even the most experienced traders find challenging. He unequivocally accepts responsibility for his choices and vows never to repeat them.

This Court should consider the fact that Mr. Maxwell will probably never again be convicted of a criminal offense. Prior to his arrest, he had not been convicted of even a minor offense. The United States Sentencing Commission has found that " . . . offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points." Research Series on the Recidivism of Federal Guideline Offenders, United States Sentencing Commission, www.ussc.gov/publicat/Recidivism_FirstOffenders.pdf (May 2004). Mr. Maxwell has always abided by the law; his involvement in this offense is an aberration that is unlikely to be repeated.

In order to avoid the imposition of an unduly harsh sentence, Undersigned Counsel respectfully requests that this Court impose a non-custodial sentence. Mr. Maxwell has proven that he can abide by any conditions of release established by this Court. He has not violated a single condition of bond since his release in April. PSR at 5. He is now a convicted felon. Many doors in his future will be closed to him based on his felony status alone. Incarceration in a prison facility and separation from his family are unnecessary punishments in this case.

If given an opportunity to serve a probationary sentence, Mr. Maxwell would be able to continue his employment, reimburse his clients, and maintain a stable household for his family. A probationary sentence would be " . . . sufficient, but not greater

than necessary, to comply with the purposes set forth in Sections 3553(a) and (b)" and consistent with Supreme Court and Eleventh Circuit precedent.


## Conclusion

Based on the foregoing, as well as the objections raised in the Presentence Report, Mr. Maxwell respectfully requests that this Court impose a non-custodial sentence. Continuation on electronic monitoring, curfew restrictions and the standard conditions of probation will ensure that he avoids involvement in additional criminal activity while providing him the opportunity to live a law-abiding life.


Dated: this 26th day of August, 2015.


Respectfully submitted,


s/Regina D. Cannon, Esq.
REGINA D. CANNON, ESQ.
GEORGIA BAR NO. 679569
ATTORNEY FOR Stafford S. Maxwell

Federal Defender Program, Inc.
Suite 1500, Centennial Tower
101 Marietta Street, N.W.
Atlanta, Georgia  30303
(404) 688-7530; Fax 404-688-0768
regina_d_cannonn@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Sentencing Memorandum was formatted in Courier 12 pt., in accordance with Local Rule 5.1B, electronically filed the day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following Assistant United States Attorney of record:

> Jeffrey Davis, Esq.
> Assistant United States Attorney
> 600 Richard B. Russell Building
> 75 Spring Street, S.W.
> Atlanta, Georgia  30303

Dated: This 26th day of August, 2015.


> *s/ Regina D. Cannon, Esq.*
> REGINA D. CANNON, ESQ.
> GEORGIA STATE BAR NO.  679569
> ATTORNEY FOR: Stafford S. Maxwell